IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

DONALD SLATER,

                Petitioner,

    -against-                         Civil Action No.
                                    01-CV-0928 (GLS/DEP)

VICTOR HERBERT,

                Respondent,

_____

APPEARANCES:                      OF COUNSEL:

FOR PETITIONER:

DONALD SLATER, *Pro Se*

FOR RESPONDENT:

HON. ELIOT SPITZER              MARIA MORAN, Esq.
Office of the Attorney General     Assistant Attorney General
State of New York
Department of Law
615 Erie Boulevard West
Suite 102
Syracuse, NY 13210

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

<u>REPORT AND RECOMMENDATION</u>

    Petitioner Donald Slater, a New York State prison inmate as a result

1

of a 1998 Onondaga County Court conviction for various crimes, including

kidnapping and assault, arising from his abduction of a woman who was

run over by his vehicle during the course of her ordeal, has commenced

this proceeding seeking federal habeas intervention pursuant to 28 U.S.C.

§ 2254.  In support of his petition, Slater advances two grounds for

habeas relief, alleging that 1) the trial court inadequately instructed the

jury as to the elements of kidnapping, and refused to charge the defense

of justification, in violation of his right to due process; and 2) his conviction

for two counts of assault in the second degree should be dismissed since

assault in the second degree is a lesser included offense falling within the

ambit of assault in the first degree, for which he was also convicted.

Respondent opposes Slater's petition, both procedurally and on the

merits.  In his opposition, respondent asserts that Slater has not fulfilled

his obligation to present the issues now raised in his petition to any state

court, and since he is now precluded from doing so, he has procedurally

defaulted with respect to those claims.  Addressing the merits, respondent

argues that the trial court's failure to give a justification jury instruction, if

improper, was not an error of constitutional proportions, and that

petitioner's inclusory concurrent offense argument presents only a matter

2

of state law and does not demonstrate abridgement of a federal constitutional or statutory right.

For the reasons set forth below, I find that for the most part, Slater is not procedurally barred from asserting the grounds set forth in his petition, but nonetheless recommend that the petition be denied on the merits.

I.    BACKGROUND

Petitioner's conviction has as its genesis a brutal assault which occurred in 1998 in Onondaga County, New York.   At approximately 11:20 p.m. on the evening of February 27, 1998 the victim, a front desk supervisor at the Four Points Sheraton Hotel, located in the Town of Salina, was asked to assist the petitioner, one of her co-workers, in jump starting his car with the use of battery cables.  Trial Transcript at 311-12, 314-19.[1]  As the victim attempted to remove the cables from her car, she was struck by the petitioner's fist, rendering her unconscious.  TT 319. After stirring briefly the victim was struck again, testifying at trial that she was unable to remember anything from that point until she awoke

_____

[1]      Among the state court documents submitted by the respondent in connection with this petition is a transcript of Slater's trial, compiled for use with respect to petitioner's direct appeal from his judgment of conviction to the New York Supreme Court Appellate Division, Fourth Department.  That document will be cited herein as "TT ___".  Other items in the state court record will be cited as "R. ___".

underneath the petitioner's car.  TT 319-20.

Several other witnesses who testified at petitioner's trial were able to assist in piecing together the sequence of relevant events during and following the time of the initial attack.  One of petitioner's co-workers, Barbara Case, testified to having witnessed the initial encounter between Slater and the victim, though she did not observe the assault.  TT 358-59. Anthony Curcio, another witness, testified that on the evening of the assault he was at the Four Points Sheraton Hotel, where he had attended a charity fundraiser.  TT 363.  Upon leaving the hotel, Curcio witnessed the petitioner's vehicle, described as a blue Pontiac, smash into another vehicle parked behind his.  TT 363-64.  Curcio observed the petitioner's vehicle subsequently drive off into an isolated portion of the parking lot. TT 363-64.  Curcio pulled behind the petitioner's car in an attempt to read the license plate, and noticed two people in the car scuffling. TT 367, 385. Curcio then returned to the hotel and reported what he had seen to officials in charge of the fundraiser.  TT 368.

As a result of Curcio's report Dave Feenan, the person in charge of the fundraiser, went to investigate what had been reported.  TT 388-90. As Feenan approached petitioner's car, which was discovered in a remote

area within the parking lot, he saw two heads pop up in the rear seat; feeling uncomfortable, Feenan turned and began walking back to the hotel.  TT 390-91.  After traversing approximately fifty yards toward the hotel, Feenan heard a male voice shouting, and observed a person get out of the car and attempt to push or pull another occupant out.  TT 391-92.  Feenan then ran into the hotel to place an emergency 911 call.  TT 393.  At some later point, Curcio observed petitioner's car speed through the hotel parking lot toward the main exit.  TT 370.  Curcio noticed at that time the right rear door was open, and that no cars were following the vehicle.  TT 369-71.

At approximately 11:30 p.m. on that same evening another witness, Frank Baniewicz, observed Slater's vehicle while driving home from a nearby pharmacy.  At that time Baniewicz observed petitioner's car back across a four lane street after apparently failing to negotiate a turn and, as a consequence, striking a snow bank.  TT 404-05.  Believing that the driver may have been intoxicated, Baniewicz began following the car in an effort to obtain a license plate number so that he could notify the proper authorities.  TT 406-07.  While following the vehicle Baniewicz noticed that its right rear door was open and that a person, later determined to be the

5

victim, was hanging out of it.  TT 407-08.

After momentarily losing sight of the automobile while stopped at an intersection, Baniewicz caught up to the vehicle and noticed that the person hanging out of the right rear door was striking the pavement.  AT 408.  Baniewicz also observed that the car was swerving and that the driver was apparently attempting to slam its right hand side into a snow bank, which was described as approximately eighteen inches or more in height.  TT 408-09.

The relevant events were also witnessed by Mark LaFaver from a window in his nearby home.  TT 442-43.  LaFaver described watching as Slater's vehicle made a "one-eighty [with] the door . . . still open . . . and something white hanging out the back of the door[.]"  TT 442-43.  After observing this sequence LaFaver entered his vehicle, telephoned 911 emergency services and, together with Baniewicz, proceeded to follow the petitioner to a local street, where Slater's car was ultimately blocked off by their vehicles.  TT 413, 443.  At that point the two witnesses observed that Slater's car appeared to be stuck, with its front end embedded in the snow bank and its rear portion protruding out into the road, and the victim pinned under the right rear tire.  AT 413, 446.  According to LaFaver and

Baniewicz, Slater was rocking his vehicle back and forth, in an apparent effort to extricate the vehicle from the snow bank, with a tire "spinning very quickly [into the victim] and . . . grinding into her each time."  TT 415, 446.

When confronted by Baniewicz and LaFaver, Slater exited his vehicle and began walking toward Baniewicz, who had exited his truck. TT 416, 450.  Becoming alarmed, Baniewicz re-entered his vehicle and locked its doors.  TT 418.  Slater approached Baniewicz's vehicle and began violently to pound on its hood and driver's side window.  TT 418. Petitioner then returned quickly to his car, put it into gear, and continued spinning the tires against the victim, who remained pinned under the vehicle.  TT 420.

A portion of the sequence of events which followed the victim's abduction were also witnessed by Lyle Stone who, shortly after 11:30 pm on the evening of February 27, 1998, went outside of his house to lock his truck.  TT 476-77.  While outside, Stone heard what sounded like a vehicle coming down the street at a high rate of speed, and observed the right rear door of Slater's vehicle swing open and what appeared to be a body fall out.  TT 478.  After the vehicle stopped, Stone observed as the driver's door opened and petitioner exited the vehicle, running around the

7

back and kicking the victim in the head.[2]  TT 479.  Stone went into his

home to call for emergency assistance and, looking from his window,

observed Slater finally stop kicking the victim, pick her up, and throw her

into a snow bank.  TT 483.  Stone then observed the petitioner return to

his vehicle, place it in reverse and then drive into the area where he had

thrown the victim.  TT 483.

Members of the Onondaga County Sheriff's Department responded

to the various emergency calls made regarding the incident.  TT 278-79,

498-501, 551-52.  Upon their arrival, sheriff's deputies observed the

victim's torso protruding from underneath petitioner's car, with her

stomach under the right rear tire.  TT 282, 501, 553.  Four or five deputies

were able to lift the vehicle off of the victim, and after doing so observed

that her clothes had been torn off and she appeared to have been badly

beaten.  TT 285, 501, 553-54.  The victim was transported to a local

hospital where she was treated for multiple head injuries, abrasions and

scrapes.  TT 529-30, 541.  During the course of her treatment the victim

advised the attending physician that "an acquaintance who asked her to

jump his car out in the parking lot . . . grabbed her . . . tore off her shirt

---

[2]     Stone estimated that the kicking lasted anywhere between forty-five
seconds to a minute and ten seconds.  TT 490.

8

and began to beat on her face[.]"  TT 537-38.

At trial the petitioner testified on his own behalf, giving a vastly different version of the events of the evening of February 27-28, 1998. Petitioner stated that having been unable to start his vehicle after clocking out of work at the Sheraton Four Points Hotel, he hailed the victim and asked for her assistance.  TT 824-25.  Petitioner claims that after successfully starting his vehicle he left the car running and went back inside the hotel to go to the bathroom.  TT 862.  When Slater exited the hotel, according to his testimony, he noticed that his vehicle was not in the same place as he had left it running and, upon investigating, found the vehicle had been moved and that there was "somebody standing by [his] car . . . hitting [the victim]."  TT 831-32.  After the man left, Slater claims, he picked up the victim and placed her in his vehicle, with the intention of taking her to the hospital for treatment.  TT 833-34.  Fearing retaliation from the persons who had beaten the victim, the petitioner stated that he exited the hotel parking lot at a high rate of speed, with his door open, and swerving side to side against snow banks.  TT 834-35.  Petitioner acknowledged ending up on Vikings Place stuck in a snow bank, but stated that he did not know how the victim got beneath his right rear

wheel.  TT 840-41.  Petitioner claims to have then exited his vehicle and waited next to the victim until the police arrived.  TT 843.

II.   PROCEDURAL HISTORY

 A.   State Court Proceedings

 As a result of the February 28-29, 1998 incident petitioner was charged in an indictment returned by an Onondaga County Grand Jury with the crimes of attempted murder in the second degree, kidnapping in the second degree, unlawful imprisonment in the first degree, attempted assault in the first degree, assault in the first degree, assault in the second degree, reckless endangerment in the first degree, and criminal possession of a weapon in the fourth degree.  R. Appendix A9-A11. Following a jury trial commenced on August 24, 1998 before Onondaga County Court Judge J. Kevin Mulroy, petitioner was convicted on all nine counts charged.  A subsequent motion filed by the petitioner pursuant to Criminal Procedure Law ("CPL") § 330.30 to set aside the jury's verdict was denied by the court.  R. Appendix A26; R. Motion Transcript 2-3.  As a result of the jury's verdict, petitioner was sentenced on September 25, 1998 as a persistent violent felony offender to concurrent indeterminate sentences of twenty- five years to life on the charges of attempted murder

in the second degree, kidnapping, assault in the first degree, attempted assault in the first degree and assault in the second degree; a concurrent indeterminate term of two years to life for unlawful imprisonment; and twelve years to life for the reckless endangerment in the first degree count, with an additional one year concurrent term for the misdemeanor offense of criminal possession of a weapon in the fourth degree.[3]  R. Sentencing Transcript 13-14.

Petitioner appealed his conviction to the New York State Supreme Court Appellate Division, Fourth Department.  In a brief filed in support of that appeal by his appellate counsel, Slater raised several issues, arguing that 1) the jury's findings of guilt in connection with counts one and eight, charging attempted murder and reckless endangerment, respectively, were legally repugnant; 2) the third count of the indictment against him, alleging unlawful imprisonment, is a concurrent inclusory count of kidnapping, also charged in the accusatory instrument; 3) the court's instruction regarding "attempt" was erroneous; 4) petitioner's conviction was against the weight of the evidence; and 5) he was denied a fair trial

---

[3]       The persistent violent felony offense finding was based upon a 1986 conviction for manslaughter in the first degree and a 1982 conviction for first degree robbery.  R. Appendix A24-25; R. Sentencing Transcript 4-5.

by the misleading identification instruction given to the jury.  In a
supplemental brief filed *pro se*, Slater additionally argued that several
other components of the jury's verdict were fatally flawed based upon the
fact that he was convicted on counts representing inclusory concurrent
counts in relation to others of which he was also convicted.  Slater's *pro
se* brief also challenged the adequacy of the trial court's jury charge,
asserting that the trial judge removed an essential element from the jury
instruction for assault and failed to instruct the jury as to justification,
thereby depriving him of a fair trial and his right to due process.

On March 29, 2000, the Fourth Department issued a decision
accepting certain of petitioner's arguments, and modifying the judgment of
conviction accordingly.  *People v. Slater*, 270 A.D.2d 925, 705 N.Y.S.2d
777 (4th Dept. 2000).  In its decision, the appellate court concluded that
the jury's guilty verdict on the attempted murder count was inconsistent
with its finding that he also committed reckless endangerment, noting that
one cannot both intend to kill a victim "and, at the same time, recklessly
create a grave risk of the victim's death by the same act."  *Id.* at 925, 705
N.Y.S.2d at 777-78 (citations omitted).  The court therefore reversed
petitioner's convictions for attempted murder and reckless endangerment,

12

and granted him a new trial as to those counts.[4]  270 A.D.2d at 925, 705 N.Y.S.2d at 778.

With this exception, petitioner's conviction was left intact by the Fourth Department's ruling.  270 A.D.2d at 926, 705 N.Y.S.2d at 778.  In its decision, the court found that petitioner had failed to preserve for review his claim that the unlawful imprisonment count was an inclusory concurrent count of kidnapping, and declined to exercise its discretion to review that contention in the interest of justice.  *Id.* at 925-26, 705 N.Y.S.2d at 778.  The court also rejected the portion of Slater's appeal regarding the trial court's attempt instruction, although expressing criticism for the court having utilized a charge which included a "now-supplanted and disfavored phrase 'substantial step'" in lieu of the accepted "'dangerously near'" language.  *Id.* at 926, 705 N.Y.S.2d at 778 (citing and quoting *People v. Hernandez*, 93 N.Y.2d 261, 272, 711 N.E.2d 972, 978, 689 N.Y.S.2d 695, 701 (1999) and *People v. Acosta*, 80 N.Y.2d 665, 670, 609 N.E.2d 518, 522, 593 N.Y.S.2d 978, 981 (1993)).  The Fourth Department went on to find that the verdict was not against the weight of

_____

[4]     Following reversal of Slater's conviction on the attempted murder and reckless endangerment counts, those charges were dismissed, on motion by the prosecution, by order issued by Acting Onondaga County Court Judge Jeffrey R. Merrill on September 6, 2000.

the evidence, and succinctly noted that after reviewing them "the remaining contentions raised in defense counsel's brief as well as in defendant's *pro se* supplemental brief . . . lack merit." *Id.* at 926, 705 N.Y.S.2d at 778.  Petitioner's request for leave to appeal his conviction to the New York State Court of Appeals was denied on July 26, 2000. *People v. Slater*, 95 N.Y.2d 858, 736 N.E.2d 870, 714 N.Y.S.2d 9 (2000) (Table).

From the papers now before the court, it does not appear that petitioner has raised any collateral, state court challenges to his conviction.

> B.    Proceedings Before This Court

Slater's petition was filed in the Western District of New York on June 4, 2001, apparently as a result of his confinement at a prison facility located within that district.  Dkt. No. 1.  The matter was subsequently transferred to this district, as the place of petitioner's trial, by order issued by District Judge John T. Elfvin on June 6, 2001.  Dkt. No. 4.

On January 7, 2002 a response to Slater's petition and accompanying memorandum, submitted by the New York State Attorney

General on behalf of the named respondent, were filed.[5]  Dkt. Nos. 12, 13.

With the submission of a "traverse" filed by the petitioner on July 22, 2002,

Dkt. No. 16, the matter is now ripe for determination, and has been

referred to me for issuance of a report and recommendation pursuant to

28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule

72.3(c).  *See also* Fed. R. Civ. P. 72(b).

III.    DISCUSSION

    A.    Standard of Review

    Addressing the merits of Slater's petition, it is important at the outset

to define the standard, which as will be seen is significantly deferential, to

be applied when examining a state court's ruling on a constitutional claim

addressed in support of a habeas petition of this nature.

    Enactment of the Antiterrorism and Effective Death Penalty Act of

1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996), brought

about significant new limitations on the power of a federal court to grant

habeas relief to a state court prisoner under 28 U.S.C. § 2254.  Under the

AEDPA, "a determination of a factual issue made by a State court shall be

---

    [5]    In addition to these filings, the Attorney General has supplied the court
with records associated with the state court proceedings involving the petitioner's
prosecution.

presumed to be correct [and t]he applicant shall have the burden of

rebutting the presumption of correctness by clear and convincing

evidence."  28 U.S.C. § 2254(e)(1); *see also Boyette v. Lefevre*, 246 F.3d

76, 88 (2d Cir. 2001) (quoting § 2254(e)(1)) (internal quotes omitted).

Significantly, a federal court may not grant habeas relief to a state

prisoner on a claim

> that was adjudicated on the merits in State court
> proceedings unless the adjudication of the claim –
>
> > (1) resulted in a decision that was
> > contrary to, or involved an
> > unreasonable application of, clearly
> > established Federal law, as determined
> > by the Supreme Court of the United
> > States; or
> >
> > (2) resulted in a decision that was
> > based on an unreasonable
> > determination of the facts in light of the
> > evidence presented in the State court
> > proceeding.

28 U.S.C. § 2254(d); *see also Noble v. Kelly*, 246 F.3d 93, 98 (2d Cir.),

*cert. denied*, 534 U.S. 886, 122 S. Ct. 197 (2001); *Boyette*, 246 F.3d at

88.  The Supreme Court has observed that

> [a] state-court decision is contrary to this Court's
> clearly established precedents if it applies a rule
> that contradicts the governing law set forth in our
> cases, or if it confronts a set of facts that is

16

> materially indistinguishable from a decision of this
> Court but reaches a different result.  A state-court
> decision involves an unreasonable application of
> this Court's clearly established precedents if the
> state court applies this Court's precedent to the
> facts in an objectively unreasonable manner.

*Brown v. Payton*, ___ U.S. ___, 125 S. Ct. 1432, 1438-39 (Mar. 22, 2005)

(internal citations omitted).

The Second Circuit has noted that when applying this test, a court

must make three relevant inquiries as a predicate for granting habeas

relief, including the following:

> (1) Was the principle of Supreme Court case law
> relied upon in the habeas petition "clearly
> established" when the state court ruled? (2) If so,
> was the state court's decision "contrary to" that
> established Supreme Court precedent? (3) If not,
> did the state court's decision constitute an
> "unreasonable application" of that principle?

*Williams v. Artuz*, 237 F.3d 147, 152 (2d Cir. 2001) (citing, *inter alia*,

*Francis S. v. Stone*, 221 F.3d 100, 108-09 (2d Cir. 2000)).

Because the AEDPA's restriction on federal habeas power was

premised in no small part upon the duty of state courts to uphold the

Constitution and faithfully apply federal laws, the AEDPA's exacting review

standards apply only to federal claims which have been actually

adjudicated on the merits in the state court.  *Washington v. Schriver,* 255

17

F.3d 45, 52-55 (2d Cir. 2001).  Specifically, as the Second Circuit explained in *Sellan v. Kuhlman*, "[f]or the purposes of AEDPA deference, a state court 'adjudicate[s]' a state prisoner's federal claim on the merits when it (1) disposes of the claim 'on the merits,' and (2) reduces its disposition to judgment."  261 F.3d 303, 312 (2001).  Significantly, the Second Circuit further held that when a state court adjudicates a claim on the merits, "a federal habeas court must defer in the manner prescribed by 28 U.S.C. § 2254(d)(1) to the state court's decision on the federal claim – <u>even if the state court does not explicitly refer to either the federal claim or to relevant federal case law.</u>"[6,7] 261 F.3d at 312 (emphasis added).

When a state court's decision is found to be decided "on the merits",

---

[6]      In the past, when wrestling with interpretation and application of the AEDPA's deference standard the Second Circuit had suggested, although leaving open the question, that deference under section 2254(d) is not mandated if a state court decides a case without citing to federal law or otherwise making reference to a federal constitutional claim in a manner adequate to justify deference under AEDPA, in which case pre-AEDPA standards would apply.  *Washington*, 255 F.3d at 52-55; *see also Noble*, 246 F.3d at 98.  That court since clarified in *Sellan*, however, that the question of whether or not a state court makes specific reference to a constitutional principle is not controlling.

[7]      In his opinion in *Sellan*, Chief Judge Walker acknowledged that enlightenment in state court decisions as to the manner of disposition of federal claims presented would greatly enhance a federal court's ability, on petition for habeas review, to apply the AEDPA deference standard.  *Sellan*, 261 F.3d at 312.  He noted, however, that a state court's failure to provide such useful guidance does not obviate a federal court's duty to make the analysis and pay appropriate deference if the federal claim was adjudicated on the merits, albeit tacitly so.  *Id.*

that decision is "contrary to" established Supreme Court precedent if it applies a rule that contradicts Supreme Court precedent, or decides a case differently than the Supreme Court on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06, 120 S. Ct. 1495, 1523 (2000). Importantly, a federal court engaged in habeas review must determine not whether the state court's determination was merely incorrect or erroneous, but instead whether it was "objectively unreasonable". *Sellan*, 261 F.3d at 315 (quoting *Williams*, 529 U.S. at 409, 120 S. Ct. at 1521 (O'Connor, J.)). The Second Circuit has noted that this inquiry admits of "[s]ome increment of incorrectness beyond error", though "the increment need not be great[.]" *Francis S.*, 221 F.3d at 111.

### B.    Exhaustion of State Remedies

_____Petitioner's first substantive ground for seeking habeas relief challenges the trial court's jury instruction regarding the charge of kidnapping in the second degree based, in large part, upon the trial court's refusal to charge justification as a defense for the crimes charged in the indictment against the petitioner.[8]  Respondent argues that this claim was

---

[8]     Slater's petition refers the court to an accompanying legal memorandum for discussion of the three grounds for seeking habeas relief.  *See* Dkt. No. 1, at 5-6.

not fairly presented to the state courts, and is thus unexhausted.

Respondent also argues that this court nonetheless is positioned to

address and deny this ground since by failing to raise the issue in his

direct appeal, petitioner has procedurally defaulted, thereby forfeiting his

right to raise this ground as part of his application for habeas relief.

A fundamental, bedrock principle of federal habeas jurisprudence

requires that before a state inmate may petition for habeas review under

28 U.S.C. § 2254, he or she must first exhaust all available state court

remedies or, alternatively, demonstrate that "there is an absence of

available State corrective process [or that] circumstances exist that render

such process ineffective to protect the rights of the applicant."  28 U.S.C.

§ 2254(b)(1); *see also Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 808

(2d Cir. 2000) (quoting § 2254).  Federal habeas claims asserted by state

inmates are deemed exhausted only after having been "fairly presented"

to the highest court of the state involved.  *Fama*, 235 F.3d at 808-09

(citing *Picard v. Connor*, 404 U.S. 270, 275, 92 S. Ct. 509, 512 (1971)).

The exhaustion doctrine recognizes "respect for our dual judicial

_____

The petition's first reference is to a portion of Slater's memorandum which addresses the procedural issue of exhaustion of remedies; only the second and third grounds provide colorable, substantive bases for the granting of habeas relief.  *See* Petitioner's Memorandum (Dkt. No. 3) at 18-25.

system and concern for harmonious relations between the two adjudicatory institutions." *Daye v. Attorney Gen. of State of N.Y.*, 696 F.2d 186, 191 (2d Cir. 1982) (citations omitted).  Although both federal and state courts are charged with securing a state criminal defendant's federal rights, the state courts must initially be given the opportunity to consider and correct any violations of federal law.  *Id.*  "The chief purposes of the exhaustion doctrine would be frustrated if the federal habeas court were to rule on a claim whose fundamental legal basis was substantially different from that asserted in state court."  *Id.* at 192.

In this instance respondent's contention that petitioner has not fairly presented the claim based upon the trial court's failure to administer a jury instruction on the defense of justification is not well taken.  In a portion of Point IV of his supplemental *pro se* brief, which the Fourth Department specifically referenced in its decision, petitioner expressly addressed the trial court's failure to charge justification, as well as intoxication, as defenses to the charges against him.  *See* R. Supplemental *Pro Se* Brief at 24-26.  The Second Circuit has noted that in determining whether a particular claim has been fairly presented to the state courts, a federal habeas court should determine whether assertion of the claim is made in

21

terms "so particular as to call to mind a specific right protected by the

Constitution[.]"  *Daye*, 696 F.2d at 194.

Often, a legal argument which is subject to closely aligned or

corresponding state and federal principles is presented to a state court

without reference or citation to the federal constitutional case law

governing authority.  The Second Circuit has observed that in such

situations exhaustion can be found despite the lack of such a an explicit

reference to federal authority.  *Jackson v. Edwards*, 404 F.3d 612, 618-19

(2d Cir. Apr. 14, 2005).  As the Second Circuit noted in *Jackson*,

> [t]he purpose of the exhaustion requirement is to
> ensure that a state court is given the "opportunity
> to pass upon and correct alleged violations of its
> prisoners' federal rights."  This opportunity is most
> straightforwardly presented when the relevant
> constitutional principle is explicitly raised in state
> proceedings.  However, this opportunity is also
> presented when the substance of the federal
> habeas corpus claim is clearly raised and ruled on
> in state court, although the federal principle may
> initially be attached to a different label than the one
> ultimately affixed in federal habeas proceedings.

404 F.3d at 619 (internal citations omitted).

Having reviewed Slater's submissions to the state courts, I find that

his argument regarding the justification defense was fairly presented to

the state courts.  Indeed, unlike the situation in *Jackson*, which also

22

presented a claim surrounding a trial court's failure to charge justification, the heading of Point IV of Slater's *pro se* brief to the Appellate Division references a federally recognized right – the right to due process of law – associated with the trial court's failure to charge justification.  *See* R. Supplemental *Pro Se* Brief at 24.  I therefore recommend against rejection of ground two of Slater's petition on the procedural basis offered by the respondent.

     C.   <u>Merits Of The Petition</u>

        1.   <u>Jury Instruction Claim</u>

     In its decision the Fourth Department dispensed with Slater's jury instruction issue in its summary, single sentence rejection of "the remaining contentions raised in . . . defendant's *pro se* supplemental brief[.]"  *People v. Slater*, 270 A.D.2d at 926, 705 N.Y.S.2d at 778.  This finding, deemed to have disposed of this argument on the merits, is entitled to AEDPA deference.  *E.g.*, *Serrano v. Fischer*, ___ F.3d ___, No. 03-2670, 2005 WL 1427298, at *3 (2d Cir. June 20, 2005) (Sixth Amendment claim decided on merits when Appellate Division dismissed as "without merit" claims "raised in [petitioner's] *pro se* supplemental brief").

23

In defense of this ground, respondent argues that no constitutional claim is presented, and that instead Slater's petition in essence raises matters involving state court jury charges, presenting merely "questions of state law and thus not reviewable on federal habeas corpus absent a showing that the jury charge deprived the defendant of a federal constitutional right."  Respondent's Memorandum (Dkt. No. 13) at 12 (citing, *inter alia*, *Blazic v. Henderson*, 900 F.2d 534, 540 (2d Cir. 1990)).

The fact that "federal habeas corpus relief does not lie for errors of state law", *Lewis v. Jeffers*, 497 U.S. 764, 780, 110 S.Ct. 3092, 3102 (1990), does not necessarily mean that errors under state law cannot rise to a level sufficient to represent cognizable violations of the constitutionally guaranteed right to due process.  *See Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348 (2000); *McMillan v. Pennsylvania*, 477 U.S. 79, 106 S.Ct. 2411 (1986).  Indeed, courts presented with the issues now at bar have on occasion granted habeas relief for a failure to charge justification where the evidence supported a justification charge under state law and where the erroneous failure to give such a charge was sufficiently harmful to render the conviction unfair.  *Davis v. Strack*, 270 F.3d 111, 123-24 (2d Cir. 2001) (citing *Cupp. v. Naughten*, 414 U.S.

24

141, 146-47, 94 S.Ct. 396, 400 (1973)).

To demonstrate that habeas relief is warranted based upon the trial court's failure to charge justification, Slater must establish 1) entitlement to the justification charge in the first instance, as a matter of state law; 2) that the failure to administer the justification charge resulted in a denial of due process; and 3) if so, that the state court's contrary conclusion represented an unreasonable application of clearly established Supreme Court precedent.  *Jackson*, 404 F.3d at 621; *see also Davis*, 270 F.3d at 124.

> i) <u>Whether Justification Was Required under New York Law</u>

N.Y. Penal Law § 35.05, (2) sets out a defense of justification for the use of physical force in circumstances where

> [s]uch conduct is necessary as an emergency measure to avoid an imminent public or private injury which is about to occur by reason of a situation occasioned or developed through no fault of the actor, and which is of such gravity that, according to ordinary standards of intelligence and morality, the desirability and urgency of avoiding such injury clearly outweigh the desirability of avoiding the injury sought to be prevented by the statute defining the offense in issue. . . .Whenever evidence relating to the defense of justification under this subdivision is offered by the defendant, the court shall rule as a matter of law whether the

25

>claimed facts and circumstances would, if
>established, constitute a defense.

N.Y. Penal Law § 35.05(2).

Under New York law justification is properly regarded as a defense, though not an affirmative defense; as such, when the defense is raised on a proper evidentiary record, the People bear the burden of disproving justification beyond a reasonable doubt. *Jackson*, 404 F.3d at 622 (citing *Davis*, 270 F.3d at 124); *see* N.Y. Penal Law §§ 25.00(1), 35.00; *In re Y.K.*, 87 N.Y.2d 430, 433, 663 N.E.2d 313, 315, 639 N.Y.S.2d 1001, 1003 (1996). "[W]henever justification is sufficiently interposed by the defendant, the People must prove its absence to the same degree as any element of the crime charged." *People v. McManus*, 67 N.Y.2d 545, 546-47, 496 N.E.2d 202, 205, 505 N.Y.S.2d 43, 46 (1986) (citations omitted). Moreover, "a charge on justification is warranted whenever there is evidence to support it." *McManus*, 67 N.Y.2d at 549, 496 N.E.2d at 207, 505 N.Y.S.2d at 48.

In determining whether the evidence warrants a justification charge, the court must assess the record in the light most favorable to the defendant. *Jackson*, 404 F.3d at 622-23; *Davis*, 270 F.3d at 124-25; *see People v. Magliato*, 68 N.Y.2d 24, 29, 496 N.E.2d 856, 860, 505

26

N.Y.S.2d 836, 840 (1986); *McManus*, 67 N.Y.2d at 549, 496 N.E.2d at

207, 505 N.Y.S.2d at 48.  As such, if the record includes evidence which,

viewed in the light most favorable to the defendant and drawing all

reasonably permissible inferences in his or her favor, satisfies the

essential elements of the defense of justification, the charge must be

given.

At trial, petitioner's counsel orally requested a justification charge

pursuant to New York Penal Law §§ 35.00 and 35.30, stating:

> my last request is for the charge of justification based upon the
> defense offered by my client, that although he did take her against
> her will and restrained her against her will, he did so in an effort to
> protect her from the actions of others, even himself, from trying to
> leap from a moving vehicle, and therefore he should be entitled to
> the charge of justification, and I think I know what you're going to
> rule, and I'm going to argue that the jury should be at least allowed
> to consider that because by not giving it to them, you basically –
> you're not giving the jury the opportunity to – it's like you
> disregarded the argument we made and you're not sanctioning the
> argument.

TT 1036-37.  The trial judge responded by observing that since the crime

of kidnapping requires intent, if the jury believes the defendant's story then

he will be afforded a "quasi justification [defense]".  TT1037.  The judge

went on to explain that if the jury were to believe the story of the

defendant, then they will find the defendant not guilty of that crime, and

thus denied the motion to include a justification charge.  TT 1037.  This ruling does not accurately reflect the New York statute or leading New York case law.  A justification charge is required, under New York law, whenever the evidence, viewed in the light most favorable to the defendant and drawing all reasonable inferences in his favor, satisfies the essential elements of a justification defense.

The petitioner testified at trial that he witnessed the victim being assaulted by an unknown man, and that he placed the victim in his car in order to protect her from any further imminent injury.  TT 831-34.  Viewing this evidence in the light most favorable to the defendant and drawing all reasonable inferences in Slater's favor, this testimony satisfied the essential elements of a justification defense.  I therefore find that the defendant was entitled to a justification charge under New York law.

As previously noted, however, the mere fact that the trial court's failure to charge justification may not have comported with applicable New York law does not end the inquiry.  Instead, petitioner is entitled to habeas relief only if the error can be said to have risen to a level of constitutional significance.

The Supreme Court has declared that "[t]he burden of

28

demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal." *Henderson v. Kibbe*, 431 U.S. 145, 154, 97 S. Ct. 1730, 1736-37 (1977) (footnote omitted).  Moreover, "[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Id.* at 155, 97 S. Ct. at 1737.  Having concluded that the failure to charge justification was an error in state law, I must next consider whether the error "so infected the entire trial that the resulting conviction violates due process."  *Cupp*, 414 U.S. at 147, 94 S. Ct. at 400.

Respondent argues that even if the court had instructed the jury on a justification defense, it would not have affected petitioner's kidnapping conviction.  Respondent's Memorandum (Dkt. No. 13) at 13-14.  I agree. As a practical matter, before a jury need consider a defendant's claim of justification, the jury must first determine that the prosecution has met its burden with respect to each element of the crime charged.  *Blazic*, 900 F.2d at 542.  For a jury to find that the prosecution met its burden with regard to the charge of kidnapping in the second degree, a jury would have had to reject significant aspects of Slater's testimony.  Under New

York law, a person is guilty of kidnapping in the second degree when he or she abducts another person.  N.Y. Penal Law § 135.20.  The term "abduct" is defined in the Penal Law as restraining a person "with intent to prevent [her] liberation by either (a) secreting or holding [her] in a place where [she] is not likely to be found, or (b) using or threatening to use deadly physical force."[9]  N.Y. Penal Law § 135.00(2).  The trial court instructed the jury that in order to find the petitioner guilty of kidnapping in the second degree, it had to conclude that the People proved seven elements, one of which was that the petitioner abducted the victim.  TT 1011-15.

The respondent argues that during the petitioner's testimony he never admitted to using or threatening to use deadly physical force on the victim.  Instead, at trial Slater claimed only that he placed the victim in his car, after someone else had assaulted her, then physically held her with one hand as he drove in order to prevent her from falling out of the vehicle.  TT 833-43.  As such, had the jury believed the petitioner's version of events, then out of necessity it would have found him not guilty

_____

[9]     "Deadly physical force" is defined in the penal law as "physical force which, under the circumstances in which it is used, is readily capable of causing death or other serious physical injury."  N.Y. Penal Law § 10.00(11).

of the offense of kidnapping in the second degree, with or without the requested justification instruction.  Respondent's Memorandum (Dkt. No. 13) at 14.   More importantly, as the respondent argues, the failure of the trial court to give a justification defense did not deprive the petitioner of a constitutional right.  Respondent's Memorandum (Dkt. No. 13) at 14.  *See Balzic*, 900 F.2d at 541-43.

In conclusion, while it could be said that New York law warranted that a justification charge be given in this case, I perceive no basis to conclude that jury would have responded differently had the charge been given.  On the facts of the case, I reject the contention that the omission of a justification charge "so infected the entire trial that the resulting conviction violate[d] due process."  *Cupp*, 414 U.S. at 147, 94 S. Ct. at 1400.

Having determined that the failure to give a justification charge did not violate the constitutional standards illuminated in *Cupp*, I need not address whether the state court's failure is remediable under 28 U.S.C. § 2254.  For the foregoing reasons, I recommend rejection of the ground of Slater's petition which is based upon his contention that a failure to give a justification defense resulted in a violation of his due process rights.

2.   Inclusory Concurrent Counts

In his second substantive ground, petitioner argues that his two
convictions for assault in the second degree are repugnant with the first
degree assault conviction, since they should properly be considered as
concurrent inclusory offenses under Article 300 of the New York Criminal
Procedure Law.  Respondent argues that this ground, when considered in
light of the AEDPA's deferential standard, should also be denied.[10]

a)   Clearly Established Supreme Court Precedent

As was previously stated, errors in state jury charges are questions
of state law and thus are not reviewable on federal habeas corpus absent
a showing that the jury charge deprived the defendant of a constitutional
right.  *Lewis*, 497 U.S. at 780, 110 S.Ct. at 3102; *Blazic*, 900 F.2d at 540
(citing, *inter alia*, *Cupp*, 414 U.S. at 146, 94 S. Ct. at 400); *see*, *e.g.*, *Soto
v. Miller*, No. 02-CV-3136, 2003 WL 23185769, at *13 (E.D.N.Y. Oct. 24,
2003) (claims regarding inclusory concurrent counts pursuant to Article

---

[10]      Respondent also argues that petitioner has at least partially failed to
present this argument to the state courts, and that he is now procedurally barred from
doing so.  Respondent's Memorandum (Dkt. No. 13) at 15.  In light of the commonality
of the components of this argument I recommend that this potential procedural bar be
overlooked and that the court consider the argument as it relates to both Count VI,
which alleges second degree assault, in violation of N.Y. Penal § 120.05(1), and Count
VII, which alleged assault in the second degree in violation of N.Y. Penal Law §
120.05(2).

300 present no constitutional question to decide on habeas corpus review); *Gardner v. Greiner*, No. 97-CV-2484, 2000 WL 863956, at *3 (E.D.N.Y. June 21, 2000) (claims regarding inclusory concurrent counts "present solely questions of state law not cognizable in a habeas corpus proceeding"). In order to evaluate the petitioner's claim, I must determine whether the petitioner was entitled to the instruction under State law and, if so, I must then also decide whether that trial court's failure to give the instruction "so infected the entire trial as to result in a violation of the Petitioner's right to due process." *Cupp*, 414 U.S. at 147, 94 S. Ct. at 400. Finally, assuming that the prior elements are met, I must decide if the state court's failure was of such a nature that it is remediable by habeas corpus, given the limitations proscribed by 28 U.S.C. § 2254. *Davis*, 270 F.3d at 124.

b.   <u>Contrary To, Or Unreasonable Application Of, Clearly Established Supreme Court Precedent</u>

A review of the Fourth Department's decision affirming petitioner's conviction reflects that his challenge to the concurrent inclusory counts was presented to and resolved against him, on the merits, by that court. *Slater*, 270 A.D.2d at 925-26, 705 N.Y.S.2d at 778. Accordingly, the claim is entitled to deferential review under the AEDPA.

33

In determining whether a petitioner was entitled to an instruction of lesser included offenses under state law, federal courts must of course defer to state court interpretations of the state's laws, so long as those interpretations are themselves constitutionally compliant. *Davis*, 270 F.3d at 124 n.4 (citing *Clemmons v. Delo*, 177 F.3d 680, 685 (8th Cir. 1999) and *Johnson v. Rosemeyer*, 117 F.3d 104, 108 (3d Cir. 1997)).  Accordingly, the Second Circuit has called upon federal courts reviewing habeas claims which assert failure to give a lesser included offense charge to answer three questions, including

> [f]irst, was the [lesser included offense] charge required as a matter of New York state law?  Second, if so, did the failure to give the requested charge violate the standard set out in *Cupp*[?]  Third, if so, was the state court's failure of such a nature that it is remediable by habeas corpus, given the limitations prescribed by 28 U.S.C. § 2254?

*Davis*, 270 F.3d at 124.

Article 300 of the New York Criminal Procedure Law defines the terms concurrent counts as "two or more counts of an indictment upon which concurrent sentences only may be imposed in case of conviction thereon."  N.Y. CPL § 300.30(3).  That section also provides that concurrent counts are inclusory "when the offense charged in one is greater than any of those charged in the others and when the latter are

all lesser offenses included within the greater."  N.Y. CPL § 300.30(4).

"When it is impossible to commit a particular crime without

concomitantly committing, by the same conduct, another offense of

lesser grade or degree, the latter is, with respect to the former, a 'lesser

included offense.'"  N.Y. CPL § 1.20(37).

The New York Court of Appeals was called upon in *People v.

Glover* to review a trial court's decision not to give a lesser included

offense instruction, applying a two-part test to determine whether a

lesser included offense instruction was warranted.  57 N.Y.2d 61, 439

N.E.2d 376, 453 N.Y.S.2d 660 (1982).  In that case the defendant was

charged with and convicted of criminal facilitation in the second degree

and criminal sale and possession of a controlled substance.  *Glover*, 57

N.Y.2d at 64, 439 N.E.2d at 377, 453 N.S.2d at 662.  The two part test

announced in *Glover* calls upon courts to examine whether 1) a

comparative examination of the statutes discloses that it would be

theoretically possible for the defendant to commit the greater offense

without committing the lesser offense; and 2) the defendant has shown

that a reasonable view of the evidence would permit a finding that the

defendant committed the lesser included offense but not the greater.

*Glover*, 57 N.Y.2d at 63-64, 439 N.E.2d at 377, 453 N.Y.S.2d at 661-

62.  The Court of Appeals in *Glover* affirmed the defendant's conviction

after determining that it was theoretically possible to commit the greater

offense without also committing the lesser offense by the same

conduct.  *Id.* at 64-65, 439 N.E.2d at 377-78, 453 N.Y.S.2d at 662.

As respondent properly states, first degree assault is a "greater"

offense than assault in the second degree.[11] In addition, assault in the

second degree under Penal Law § 120.05(1) requires proof of an intent

to cause serious physical injury, whereas assault in the first degree

under § 120.10(4) does not require such an intent. Thus, it is possible

to commit the offense of assault in the first, as charged in Count IV of

the indictment against the petitioner, without committing the offense of

assault in the second degree, as charged in Count VI.[12]  *People v.*

*Hahn*, 10 A.D.3d 809, 810, 782 N.Y.S.2d 161, 162-63 (3d Dept. 2004).

Applying prevailing New York standards, I find that petitioner was

---

[11]     Under New York law assault in the first degree is a class B felony, while second degree assault is a class D felony.

[12]     The same analysis could be used to address the merits of petitioner's claim that Count VII is inclusory concurrent to Count IV.  Assault in the second degree under section 120.05(2) requires proof of an intent to cause physical injury with a dangerous instrument, whereas assault in the first degree under section 120.10(4) does not require either that intent or the use of a dangerous instrument.  Accordingly, it cannot be said that Count VII is a lesser included offense of Count IV.

not entitled to the required lesser included offense instruction.  Under

*Glover,* the petitioner could have been convicted of first degree assault

(Count IV), without a showing of the intent element which is required in

the statutory language of second degree assault (Count VI).  New York

Penal Law § 120.10(4).  It is clear that the trial court's instruction to the

jury included all the necessary elements of second degree assault

(Counts VI and VII), including the element of intent.  TT 1021-22.

Having made this determination, it is unnecessary for me to

proceed to examine whether failure to give the requested instruction

rose to a level of constitutional significance under *Cupp*, and if so,

whether habeas relief is warranted.  I therefore recommend that the

second ground cited in Slater's petition for habeas corpus relief be

denied.

IV.    SUMMARY AND RECOMMENDATION

I find, notwithstanding respondent's argument to the contrary, that

the two substantive grounds asserted in Slater's petition for habeas

relief have been fairly presented to, though rejected by, the state

courts.  Consequently, respondent is not entitled to dismissal of all or

portions of the petition on the procedural basis of Slater's failure to

exhaust.

I also find, applying the governing, deferential AEDPA standard, that the state appellate court's decision rejecting both of the arguments now raised was neither contrary to nor an unreasonable application of Supreme Court precedent.  Accordingly, it is hereby

RECOMMENDED, that the petition in this matter be DENIED and DISMISSED in all respects.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of Court.  FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; *Rolden v. Racette,* 984 F.2d 85 (2d Cir. 1993).

It is further ORDERED that the Clerk of Court serve a copy of this report and recommendation upon the parties by regular mail.

David E. Peebles
U.S. Magistrate Judge

Dated:      July 7, 2005
            Syracuse, NY